UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEAH NICHOLLS,**<br><br>　　Plaintiff,<br><br>　　　v.<br><br>**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,**<br><br>　　Defendant. | Civil Action No. 11-1654 (JEB) |

**MEMORANDUM OPINION**

　　Federal law prohibits individuals who have not registered for the Selective Service from holding appointments in federal agencies. See 5 U.S.C. § 3328. Plaintiff Leah Nicholls is seeking records that concern the Government's treatment of people under this statute. To that end, she submitted requests under the Freedom of Information Act to the Office of Personnel Management. When OPM ultimately responded that it possessed no responsive documents, Plaintiff initiated this suit. Both parties have now moved for summary judgment. Because OPM did not conduct a sufficiently thorough search, the Court will deny its Motion. In addition, the Court will grant Plaintiff's Motion in part and require OPM to release documents relating to reconsiderations of certain decisions under § 3328.

**I.　Background**

　　On April 22, 2011, Plaintiff submitted a FOIA request to OPM. See Pl. Mot. & Opp., Exh. 1 (Declaration of Leah M. Nicholls), ¶ 2. "The request sought all records in OPM's possession or control created since January 20, 2001, that fell into three categories":

1

1. "[R]ecords that identify the number, approximate number, or categories of employees terminated from federal agency employment under 5 U.S.C. § 3328";

2. "[R]ecords that identify the number, approximate number, or categories of individuals who have been denied employment with federal agencies or have had offers of employment rescinded under 5 U.S.C. § 3328"; and

3. "[R]ecords relating to any formal or informal appeals made either to any individual agency or to OPM regarding the termination, denial of employment, or withdrawal of an employment offer pursuant to 5 U.S.C. § 3328."

Id., ¶ 3.

Three days later, the request was forwarded to Gary Lukowski, who is the Manager of the Workforce Information Group and the person who supervises the processing of FOIA requests involving the government-wide database used for the federal civilian workforce. See Govt. Mot., Attach. 2 (Declaration of Gary A. Lukowski), ¶¶ 2, 5. This database is called the Enterprise Human Resources Integration-Statistical Data Mart (EHRI-SDM), and it "is operated and maintained by OPM and is the government's official source of government-wide workforce information." Id., ¶ 5. The EHRI-SDM "has approximately 100 data elements," including details on "resignations[] and other terminations." Id. Separations from employment are broken down into categories such as "mandatory retirements, disability retirements, voluntary retirements, resignations in lieu of involuntary actions, resignations, removals, terminations during probationary/trial periods, and simple terminations." Id., ¶ 6. Lukowski, after "review[ing] the list of available nature of action codes pertaining to separations . . . [,] determined that no nature of action code exists in the EHRI-SDM that would indicate an individual was separated from an agency due to his failure to register with the Selective Service . . . [or was] denied employment with a federal agency or had an offer of employment rescinded [for that reason]." Id.

Lukowski, "[o]ut of an abundance of caution," also forwarded the request to Mary Carter, "OPM's personnel processing subject matter expert," who confirmed that "there was no way to identify the individuals requested." Id., ¶ 7. OPM contends it informed Plaintiff between April 27 and May 23, 2011, that "OPM did not maintain the information she was seeking." Govt. Mot., Attach. 1 (Declaration of Ryan Witt), ¶ 7. Plaintiff, on the contrary, believes she received no such message. Nicholls Decl., ¶ 5. Both sides nevertheless agree that on May 23 Plaintiff called OPM's FOIA Coordinator, Ryan Witt, to follow up, and Witt agreed to look again at her request. Id., ¶ 5; Witt Decl., ¶ 8. Witt met at some point that summer with Lukowski and again verified that "OPM did not have the requested records," which information he relayed to Plaintiff on August 30. Id., ¶¶ 8, 11-12; Nicholls Decl., ¶ 8. Plaintiff relates the substance of further discussions with OPM, but because those conversations may have been part of settlement discussions and, in any event, are not necessary to the resolution of this Motion, the Court will not rely upon them.

Plaintiff then filed this suit on September 13, and both parties now seek summary judgment.

## II.   Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. Liberty Lobby, Inc., 477 U.S. at 248. Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.   Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (quoting Rose v. Dep't of Air Force, 495 F.2d 261, 263 (2d Cir. 1974)) (internal quotation marks omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall

4

make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The competing Motions here present two issues that the Court must resolve. First, was OPM's search for documents responsive to Plaintiff's first two requests adequate? Second, does Plaintiff's third request cover adjudications and reconsiderations of whether an individual's failure to register was knowing and willful? The Court will address each in turn.

    A.  First and Second Requests

To gain summary judgment on Plaintiff's challenge to the adequacy of its search, OPM must demonstrate "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." Morely v. CIA, 508 F.3d 1109, 1114 (D.C. Cir. 2007) (quoting Weisberg v. DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983)) (internal quotation mark omitted) (alteration in original); see also Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995). The agency "must make 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Nation Magazine, 71 F.3d at 890 (quoting Oglesby v. U.S. Dep't of Army, 920

F.2d 57, 68 (D.C. Cir. 1990)). "A reasonably calculated search," however, "does not require an agency to search every file where a document could possibly exist." Hidalgo v. FBI, No. 10-5219, 2010 WL 5110399, at *1 (D.C. Cir. Dec. 15, 2010) (citing SafeCard Servs., 926 F.2d at 1201). Instead, it merely "requires that the search be reasonable in light of the totality of the circumstances." Id. "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by FOIA." Negley v. FBI, 169 Fed. Appx. 591, 594 (D.C. Cir. 2006) (quoting Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986)) (internal quotation marks omitted) (alteration in original).

In this case, OPM's declarations explain in detail its search for responsive material in the EHRI-SDM database. Plaintiff raises two challenges to the thoroughness of that search. First, she argues that OPM should also have checked for documents held by an OPM division named the Federal Investigative Services (FIS). Pl. Mot. & Opp. at 10. This position is based on her discussions with FOIA Coordinator Witt, who at one point "mentioned to [her] that the records might be held by [FIS]." Nicholls Decl., ¶ 8. Defendant's Opposition/Reply never addresses this point, and OPM offers nothing to dispute Plaintiff's theory beyond a conclusory statement – unsupported by declaration – that "FIS does not have responsive records." Def. Opp. & Reply, Attach. 1 (Statement of Facts), ¶ 2. Defendant's failure to refute Plaintiff's argument that it should have checked with FIS precludes summary judgment on this issue. See Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested. . . . At the very least, [the agency] was required to explain in its affidavit that no other record system was likely to produce responsive documents.").

Plaintiff also maintains that OPM should have searched beyond the EHRI-SDM database for written or typed records. Pl. Mot. & Opp. at 10. Plaintiff, however, has no basis to believe that responsive materials exist in such records. This is particularly true because Plaintiff is seeking aggregate data about types of governmental action – *i.e.*, the sort of information contained in databases – rather than individual records themselves. Especially in light of Lukowski's explicit statement that he went so far as to consult the agency's expert on how OPM processes personnel actions – the individual who, quite literally, wrote the book on the topic – "to ensure that [he] was not overlooking any other repository or method by which OPM could potentially identify or produce responsive records," Lukowski Decl., ¶ 7, the agency's representation that the aggregate information Plaintiff seeks does not exist is credible. Because "[a]gency affidavits are accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," Negley, 169 Fed. Appx. at 594 (quoting SafeCard Servs., 926 F.2d at 1200) (internal quotation marks omitted) (alteration in original), Plaintiff's conjecture that aggregate information might be located in non-electronic records does not undermine the agency's position.

The Court, therefore, will require OPM to search FIS alone for responsive documents and inform Plaintiff of its result before moving again for summary judgment.

B. Third Request

Plaintiff's third request has provoked a semantic controversy. Plaintiff requested "records relating to any formal or informal appeals made either to any individual agency or to OPM regarding the termination, denial of employment, or withdrawal of an employment offer pursuant to 5 U.S.C. § 3328." Nicholls Decl., ¶ 3. In its Motion, the Government candidly acknowledges that "OPM received requests for adjudication of whether a particular failure to

7

register was knowing and willful.  OPM's Director also has the authority to reconsider OPM's initial adjudication of whether a failure to register is knowing and willful."  Govt. Mot. at 10 n.1.  OPM, therefore, "has records of adjudications and reconsiderations of whether an individual's failure to register was knowing and willful . . . ."  Id.  Since these are not denominated actual "appeals," OPM does not believe the records are responsive.  Def. Opp. & Reply at 4-5.  This is too cabined a position.

A brief review of OPM's procedures is helpful here.  Individuals over 26 years old who failed to register with the Selective Service are "ineligible for appointment to a position in an executive agency of the Federal Government" unless they can prove to the Office of Personnel Management (OPM) "that [their] failure to register was neither knowing nor willful."  5 C.F.R. § §§ 300.701, 300.704.  They may request an OPM decision on the issue by submitting a written request along with an explanation of their failure to register.  § 300.705.  "OPM will determine whether failure to register was knowing and willful when an individual has requested a decision and presented a written explanation."  § 300.706(a).  The determination is made by the Associate Director for Career Entry or his designee, id., and that decision is final "unless reconsidered at the discretion of the Associate Director.  There is no further right to administrative review."  § 300.706(c).  The sole exception is that "[t]he Director of OPM may reopen and reconsider a determination."  § 300.706(d).  It is also provided that the "Director of OPM may . . . delegate to an executive agency the authority to make initial determinations.  However, OPM may review any initial determination and make a final adjudication in any case."  § 300.706(e).

Plaintiff argues that "the word 'appeals' is functionally equivalent to the words 'adjudications' and 'reconsiderations' in the § 3328 context."  Pl. Mot. & Opp. at 6.  This seems half right.  It is difficult to see how an initial adjudication can constitute an "appeal," which is

defined as "a proceeding undertaken to have a decision reconsidered by a higher authority." Black's Law Dictionary 94 (B. Garner ed., 2009).  Records relating to OPM's initial determination, then, would be outside the scope of the request.  Any reconsideration of that determination, however, clearly falls within the definition of "appeal." The reconsideration process is plainly an appeals process, and a FOIA requester need not utilize the precise jargon employed by agency officials.  Indeed, "an agency . . . has a duty to construe a FOIA request liberally."  Nation Magazine, 71 F.3d at 890.  Any records relating to reconsiderations, accordingly, should have been considered responsive to Plaintiff's request for records relating to "appeals."

OPM responds that any adjudication – and, presumably, any reconsideration – occurs before terminations or denials of employment, thus rendering the records not responsive.  Govt. Opp. & Reply at 5.  Again, OPM reads Plaintiff's request too narrowly.  Plaintiff sought documents "relating to appeals . . . regarding the termination, denial of employment, or withdrawal of an employment." (Emphasis added).  She did not, as OPM sometimes suggests in its briefs, request documents related to "appeals from" employment actions.  See Govt. Opp. & Reply at 16 (emphasis added).  Plaintiff's use of words like "relating to" and "regarding" plainly indicate that she sought information about appeals lodged at any point during the § 3328 process, not only those taken after the relevant employment action.  See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 & n.16 (1983) (noting that "relate to" denotes only some connection or reference to the relevant object); cf. Nation Magazine, 71 F.3d at 890 (stating that requester's use of words "pertaining to" should have alerted agency that broad class of information was sought). Instances of reconsideration by another authority, whether before or after the termination, are

still connected to that termination. OPM thus cannot avoid disclosure on the ground that reconsiderations may have taken place prior to any formal employment action.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order denying Defendant's Motion and granting Plaintiff's Motion in part and denying it in part.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 29, 2012